UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| RUSSELL SELF,<br><br>Plaintiff,<br><br>v.<br><br>DUSTIN LAWSON, TYLER WIMBLE, JOSHUA LAWS, WAYNE WILHOIT, and CHRISTINA SELF,<br><br>Defendants. | Civil Action No. 2:24-cv-210 |

**COMPLAINT and**
**DEMAND FOR JURY TRIAL**

The Plaintiff, for the claims against the Defendants, alleges as follows:

**INTRODUCTION**

1. This action is brought by Russell K. Self against the Defendants pursuant to 42 U.S.C. § 1983, the Fourth Amendment and Fourteenth Amendments of the Constitution of the United States, and the laws of the State of Tennessee.

2. Plaintiff brings this action to recover all damages allowable under the law.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff brings claims for relief pursuant to 42 U.S.C. § 1983.

4. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, based upon supplemental jurisdiction for the state law claims.

5. Based upon its supplemental jurisdiction, this Court should exercise its pendent jurisdiction because the Plaintiff's state law claims derive from the same common nucleus of

operative facts as the federal claims and all such claims are so interrelated that they may be fairly and efficiently disposed of in one lawsuit.

6. Venue is properly set within this district pursuant to 28 U.S.C. § 1391(b), because, among other things, all Defendants reside, or are in, or are located in the Eastern District of Tennessee and the events upon which this suit are based occurred in this district.

**PARTIES**

7. Plaintiff Russell Keith Self is a citizen and resident of Greene County, Tennessee.

8. Defendant Dustin Lawson is an officer employed by the Mosheim Police Department and is sued in his personal capacity. Defendant Dustin Lawson may be served with process at 1019 Maupin Road, Chuckey, Tennessee 37641.

9. Defendant Tyler Wimble is an officer employed by the Mosheim Police Department and is sued in his personal capacity. Defendant Tyler Wimble may be served with process at 334 Viking Place, Greeneville, Tennessee 37745.

10. Defendant Joshua Laws is an officer employed by the Mosheim Police Department and is sued in his personal capacity. Defendant Joshua Laws may be served with process at 6420 Chuckey Pike, Chuckey, Tennessee 37641.

11. Defendant Wayne Wilhoit is or was an officer employed by the Mosheim Police Department and is sued in his personal capacity. Defendant Wayne Wilhoit may be served with process at 3351 Highway 107, Chuckey, Tennessee 37641.

12. Defendant Christina Self is a citizen and resident of Grainger County, Tennessee. Defendant Christina Self may be served with process at 491 Livingston Road, Bean Station, Tennessee 37708.

## FACTS

13. Plaintiff and Defendant Christina Self are former spouses who share custody of a minor daughter, referred to herein as "A.S."

14. Plaintiff and Defendant Christina Self's marital home was located at 515 Iron Bridge Road, Mosheim, Tennessee ("Marital Home").

15. Plaintiff and Defendant Christina Self co-owned a salon located at 7825 Blue Springs Parkway, Mosheim, Tennessee ("the Salon").

16. At all relevant times, Plaintiff and Defendant Christina Self were parties to a divorce and custody action pending in the Greene County Chancery Court.

17. Due to the acrimonious nature of the domestic dispute between the parties, Defendant Christina Self repeatedly made false allegations against Plaintiff, including but not limited to allegations of sexual misconduct and abuse that had no merit whatsoever.

18. The history and nature of Defendant Christina Self's false allegations against Plaintiff were well-known throughout Greene County, including amongst officers at the MPD.

19. On October 13, 2023, Defendant Christina Self went to the Mosheim Police Department to report that A.S. did not wish to go with Plaintiff for his allotted custody period.

20. In part due to pressure from her mother, A.S. wrote a false statement for MPD claiming that she did not want to stay with her father because he yells, cusses, and hits things, which caused her to feel threatened and occasionally fear for her life.

21. Defendant Christina Self also falsely alleged that A.S. was being mentally abused by Plaintiff.

22. On October 13, 2023, Defendant Christina Self filed a Petition for Order of Protection in the Circuit Court of Greene County on behalf of A.S.

23. In the Petition and on behalf of A.S., who was listed as the Petitioner, Defendant Christina Self asked the court for temporary custody and to order Plaintiff to, among other things, make no contact with A.S., attend therapy, and pay fees for the case.

24. That same day, the Circuit Court for Greene County granted A.S. an *ex parte* Order of Protection.

25. The Order lists A.S. as the Petitioner, and Plaintiff as the Respondent.

26. Defendant Christina Self's name does not appear on the *ex parte* Order of Protection, and the only reference to her is an option on the form that states, "Petitioner is under 18 and the Petition was filed on behalf of an unemancipated person (someone under 18 years of age) pursuant to TCA § 36-3-602 by [checked box] child's parent."

27. The *ex parte* Order contained the following mandates to Plaintiff: "Do not abuse, threaten to abuse, hurt or try to hurt, or frighten Petitioner and/or Petitioner's minor children under 18"; "Do not put Petitioner and/or Petitioner's minor children under 18 in fear of being hurt or in fear of not being able to leave or get away"; "Do not stalk or threaten to stalk Petitioner and/or Petitioner's minor children under 18."

28. On October 16, 2023, Defendant Christina Self returned to the Mosheim Police Department to follow up on the allegations she made on October 13 and provide the department with custody documents.

29. At that time, Defendant Christina Self made additional false allegations of misconduct by Plaintiff with respect to their daughter, A.S.

30. MPD conducted an investigation into Defendant Christina Self's allegations, at the conclusion of which the MPD concluded that her allegations and statements were incorrect, inconsistent, and misleading.

31. Meanwhile, the Circuit Court for Greene County entered bridging orders such that the *ex parte* Order of Protection would be extended through October 31, 2023, and transferred the case to the Greene County Chancery Court in which the divorce and custody action were then pending.

32. On November 15, 2023, the Chancery Court for Greene County entered an Order that allowed Defendant Christina Self to retrieve certain property from the Marital Home on November 18, 2023, between 8:00 a.m. and 6:00 p.m.

33. A law enforcement officer was required to be present during the retrieval period, and a list of items that Defendant Christina Self was allowed to retrieve was attached to the Order.

**OFFICERS ILLEGALLY ARREST RUSSELL SELF**

34. On November 18, 2023, Defendant Christina Self went to the Marital Home to retrieve the items of personal property awarded to her.

35. She was accompanied by Constable Brobeck of Greene County.

36. After Defendant Christina Self left the property, Plaintiff returned home and discovered that she had taken numerous items that were not awarded to her.

37. That same day, Plaintiff called MPD to report that his possessions had been stolen and that he had found the missing items at the Salon.

38. MPD Officers Lawson, Wimble, Laws, and Wilhoit responded to the call, arriving at the Salon at or around 7:42 p.m.

39. Officers Wimble and Laws discussed the existence of an Order of Protection with Defendant Christina Self.

40. Thereafter, Officer Wimble told Officer Lawson, “Pretty sure he’s got an active Order of Protection against him from being on this property and making contact with [Christina Self], you might want to check on that.”

41. Officer Lawson searched for Plaintiff’s information in the NCIC database, and was able to pull up a summary report of the Order of Protection on NCIC.

42. The NCIC report that Officer Lawson pulled up specifically stated: “THE FOLLOWING IS AN NCIC PROTECTION ORDER RECORD. DO NOT SEARCH, DETAIN, OR ARREST BASED SOLELY ON THIS RECORD. CONTACT ENTERING AGENCY TO CONFIRM STATUS AND TERMS OF PROTECTION ORDER.”

43. The NCIC database contains prewritten code options that reflect conditions contained in protection orders generally, but they are not exact reproductions of the specific language of individual orders.

44. One of the prewritten conditions listed on the report that Officer Lawson pulled up states: “PCO/01: THE SUBJECT IS RESTRAINED FROM ASSAULTING, THREATENING, ABUSING, HARASSING, FOLLOWING, INTERFERING, OR STALKING THE PROTECTED PERSON AND/OR THE CHILD OF THE PROTECTED PERSON.”

45. In contrast, the actual Order that was served on Plaintiff makes no mention of Christina Self as the Petitioner and/or Protected Person, and it lists the following prewritten restrictions: “Do not abuse, threaten to abuse, hurt or try to hurt, or frighten Petitioner and/or Petitioner's minor children under 18”; “Do not put Petitioner and/or Petitioner’s minor children under 18 in fear of being hurt or in fear of not being able to leave or get away”; “Do not stalk or threaten to stalk Petitioner and/or Petitioner’s minor children under 18.”

46. Four conditions on the Order form were left unchecked, one of which states: "Do not come about the Petitioner and/or Petitioner's minor children protected by this order (including coming by or to a shared residence) for any purpose."

47. While Officer Lawson read the report, Officer Wimble walked back to the patrol car to call another MPD officer who had worked with Wimble on the investigation against Plaintiff based on Defendant Christina Self's false allegations of sexual misconduct.

48. Shortly thereafter, Officer Lawson walked over to Wimble and read from his phone, "He has a Temporary Order of Protection. It doesn't say anything about he can't be here, but it says he is subject to restraint from assaulting, threatening, abusing, harassing, following, interfering, stalking the protected person, the child of the protected person. It's transferred to Chancery Court. The subject may not threaten a member of the protected person's family or household. The subject is prohibited from possessing and or purchasing a firearm or other weapons".

49. Officer Benjamin Henry, who was on speaker phone with Officer Wimble, expressed skepticism to Officers Lawson and Wimble about the validity of the *ex parte* Order of Protection and the allegations it was based on, given that the MPD investigation into Defendant Christina Self's allegations concluded and found no merit in any of the claims against Plaintiff.

50. During that phone call, Officer Henry also expressed hesitation and skepticism with respect to the accuracy of the NCIC report from which Officer Lawson was reading, saying that temporary orders of protection often stay on the database for prolonged periods even when they are no longer in effect, and inquiring whether the parties had any paperwork in their possession.

51. Notwithstanding Officer Henry's reservations, after the call concluded Officers Wimble and Lawson resolved to approach Plaintiff and detain him for a violation of the Order of Protection.

52. Officers Wimble and Lawson discussed their plan to approach Plaintiff, and agreed that they were to figure out why he was there.

53. Plaintiff thereafter told Officers Lawson, Wimble, Laws, and Wilhoit that his friend was bringing a bag with his court documents so he could provide them with paperwork relevant to the divorce action and the *ex parte* Order of Protection.

54. Plaintiff explained that he was legally allowed to be on the property, that the *ex parte* Order of Protection proceeding was still pending, and that his friend was bringing copies of the relevant documents for the officers' perusal.

55. Plaintiff additionally explained to the Officers, particularly Officer Wimble, that the *ex parte* Order of Protection was not for Defendant Christina Self, but rather for their daughter, A.S.

56. In clarifying that the Order was for the protection of A.S., not Defendant Christina Self, Plaintiff brought up Defendant Christina Self's false allegations against him, of which the Officers were well aware.

57. Officer Wimble told Plaintiff that he was aware of the incident involving the false allegations.

58. Around 7:57 p.m., Officer Lawson left the discussion between Officer Wimble and Plaintiff and walked back to the porch of the Salon.

59. A few moments later, Officer Wimble greeted Plaintiff's friend and allowed them to drop off Plaintiff's bag of court documents.

60. Officer Lawson asked Defendant Christina Self to provide him with the relevant paperwork, which she claimed to have, but she was unable to produce it.

61. At this time, Defendant Christina Self asserted that Officer Lawson had seen "it," to which Officer Lawson responded that he had not, in fact, seen anything of the sort.

62. Defendant Christina Self falsely told Officer Lawson in reference to the *ex parte* Order of Protection that she "took [it] out" on both herself and A.S.

63. When it became clear that Defendant Christina Self was unable to find a copy of the *ex parte* Order of Protection, Officer Wimble asked her if the Order was for her daughter or for her. Defendant Christina Self responded, "Both."

64. Defendant Christina Self's statements to the Officers that the Order of Protection applied to her as well as A.S. were false and made with the intent to cause Plaintiff's arrest.

65. Officers Lawson and Wimble walked back to the patrol car, where Officer Lawson called central dispatch to confirm that there was an Order of Protection.

66. After ending the call, Officer Wimble told Officer Lawson, "I would say he has violated this Order of Protection based on the fact that he has followed this person here. So I'm good with booking him."

67. The Order of Protection did not apply to Defendant Christina Self, nor did it prohibit Plaintiff from following her, nor did Plaintiff ever, in fact, follow her.

68. Nevertheless, Officer Lawson agreed with Officer Wimble's conclusion and instructed Officer Laws and Officer Wilhoit to take Plaintiff into custody.

69. At or around 8:11 p.m., Officer Laws detained Plaintiff, while Officers Wimble and Lawson went to conclude speaking with Defendant Christina Self and explain that Plaintiff was under arrest for violation of the Order of Protection.

70. Afterward, Officer Wimble began discussing the arrest with Officer Laws.

71. When Officer Wimble stated that a copy of the Order was at the station, Officer Laws responded that Plaintiff had a copy of the Order and had offered it to them for their review, at which point Officer Wimble said, “Well that don’t do no good with everything we’re saying.”

72. While Officer Laws and Officer Wilhoit placed Plaintiff under arrest, Plaintiff insisted he had not violated the Order, saying, “I wasn’t around my daughter.”

73. Officer Laws responded that Plaintiff violated the Order of Protection because it was for Defendant Christina Self’s benefit, to which Plaintiff replied, “No it’s not, that’s what I was fixing to show you.”

74. Officer Laws and Officer Wilhoit ignored Plaintiff and continued to detain him.

75. Meanwhile, at or around 8:18 p.m., Officer Lawson began filling out an Incident Report on his phone.

76. As Officer Lawson filled out the Incident Report, he said aloud, “So technically I should put the daughter, too, as a victim.” Officer Wimble responded, “Yeah, both of them.”

77. Thereafter, Officer Lawson, with the assistance of Officers Wimble, Laws, and Wilhoit, completed an Incident Report and Affidavit of Complaint in which he falsely states that Plaintiff violated the *ex parte* Order of Protection on A.S. and charged him with violating Tenn. Code Ann. § 39-13-113 simply because A.S. happened to be inside the Salon during the events set forth herein.

78. Defendants brought Plaintiff to the Greene County Jail, where he was detained in excess of 24 hours.

79. On November 20, 2023, Plaintiff appeared at the General Sessions Court for Greene County for a preliminary hearing.

80. At that hearing, the General Sessions Court concluded that there was no probable cause to believe that Plaintiff had violated the Order of Protection and dismissed the charge against Plaintiff.

81. On November 21, 2023, General Sessions Court Judge Kenneth N. Bailey, Jr. entered an Order for the Expungement of Criminal Record to expunge the charge from Plaintiff's record.

82. On December 8, 2023, the Chancery Court of Greene County dismissed the Petition for Order of Protection for lack of evidence.

**FIRST CAUSE OF ACTION**
**Section 1983 Claim for False Arrest & False Imprisonment Against Dustin Lawson, Tyler Wimble, Joshua Laws, and Wayne Wilhoit**

83. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

84. At all relevant times, Defendants Dustin Lawson, Tyler Wimble, Joshua Laws, and Wayne Wilhoit (collectively, "the Mosheim Officers") were acting under the color of law.

85. The Mosheim Officers willfully and intentionally seized, detained, and arrested Plaintiff, and caused him to be imprisoned, without probable cause, and without reasonable basis to believe such cause existed.

86. By arresting and detaining Plaintiff without adequate probable cause to believe that a crime had been committed, the Mosheim Officers subjected Plaintiff to false arrest and false imprisonment in violation of his Fourth Amendment right to be free from unreasonable seizure.

87. As a direct and proximate result of the violation of Plaintiff's constitutional right to be free from false arrest and false imprisonment, Plaintiff suffered damages, including but not

limited to the deprivation of his liberty, loss of his constitutional rights, and mental anguish, and he is therefore entitled to relief under 42 U.S.C. § 1983.

88. In falsely arresting and imprisoning Plaintiff, the Mosheim Officers exhibited callous disregard and reckless indifference toward Plaintiff's federally protected rights such that Plaintiff is further entitled to punitive damages pursuant to 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
**Section 1983 Claim for Malicious Prosecution Against Dustin Lawson, Tyler Wimble, Joshua Laws, and Wayne Wilhoit**

89. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

90. At all relevant times, the Mosheim Officers were acting under color of law when they initiated, made, influenced, and/or participated in the decision to prosecute Plaintiff for violation of an Order of Protection.

91. The Mosheim Officers, and particularly Officer Dustin Lawson, gave false and/or inaccurate information in the Incident Report and Affidavit of Complaint in order to justify pressing charges for violation of an Order of Protection.

92. In giving false and/or inaccurate information to justify pressing charges against Plaintiff, the Mosheim Officers deprived Plaintiff of his constitutionally protected right to be free from malicious prosecution, detention without probable cause, and unreasonable seizure, in violation of the Fourth Amendment.

93. The Mosheim Officers' actions were intentional and amounted to a reckless or callous indifference to the Plaintiff's rights.

94. The criminal proceedings against Plaintiff terminated in his favor.

95. As a direct and proximate result of the Mosheim Officers' actions and/or omissions, Plaintiff sustained injuries and/or damages to his person and his reputation.

96. Plaintiff is entitled to relief pursuant to 42 U.S.C. § 1983, including attorney's fees and litigation expenses.

**THIRD CAUSE OF ACTION**
**False Arrest and False Imprisonment Pursuant to Tennessee Common Law Against Dustin Lawson, Tyler Wimble, Joshua Laws, and Wayne Wilhoit**

97. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

98. The Mosheim Officers arrested and imprisoned Plaintiff for violation of an *ex parte* Order of Protection without probable cause.

99. The Mosheim Officers intentionally, recklessly, and unlawfully, violated the personal liberty of Plaintiff upon detaining, restraining, and confining him against his will at the Greene County Jail without legal justification.

100. The detention, restraint, and confinement by the Mosheim Officers were not privileged or authorized.

101. As a direct and proximate result of the unlawful detention, restraint, and confinement, Russell Self suffered injuries including but not limited to pain and suffering, emotional distress, and mental anguish.

102. For their intentional and reckless conduct, punitive damages should be awarded.

**FOURTH CAUSE OF ACTION**
**Malicious Prosecution Pursuant to Tennessee Common Law Against Dustin Lawson, Tyler Wimble, Joshua Laws, and Wayne Wilhoit**

103. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

104. On November 18, 2023, the Mosheim Officers initiated criminal proceedings against Plaintiff for violation of an Order of Protection.

105. In making false and/or inaccurate statements in the Incident Report and Affidavit of Complaint for the purpose of prosecuting Plaintiff, the Mosheim Officers acted with malice and without probable cause.

106. The criminal proceedings against Plaintiff for alleged violation of an Order of Protection terminated in his favor.

107. As a direct and proximate result of the Mosheim Officers' acts and/or omissions, Plaintiff sustained injuries and/or damages to his person and reputation.

**FIFTH CAUSE OF ACTION**
**False Arrest and Malicious Prosecution Pursuant to Tennessee Common Law Against Christina Self**

108. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

109. In filing the Petition for Order of Protection and communicating with the Mosheim Officers on November 18, 2023, Defendant Christina Self made false statements to the authorities without exercising reasonable care to ensure the truth of her statements.

110. At all relevant times, Defendant Christina Self acted intentionally, recklessly, and/or negligently in making false statements to the authorities for the purpose of causing Plaintiff to be arrested and subsequently prosecuted.

111. As a direct and proximate result of Defendant Christina Self's false allegations and statements to the police, Plaintiff was arrested and subsequently prosecuted for violation of an *ex parte* Order of Protection.

112. At all relevant times, Defendant Christina Self acted with malice in that she wished to annoy, injure, embarrass, and/or harass Plaintiff by causing his wrongful arrest.

113. At all relevant times, Defendant Christina Self acted without probable cause in causing the Mosheim Officers to arrest Plaintiff because she knew and/or had reason to know that the Order of Protection did not apply to her and that she was making false statements to the authorities.

114. The criminal proceedings against Plaintiff for alleged violation of an Order of Protection terminated in his favor.

115. As a result of Defendant Christina Self's actions, Plaintiff sustained injuries and/or damages to his person and reputation.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38 the Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff hereby prays for the following:

A. A judgment against Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial.

B. A judgment against Defendants for punitive damages in an amount to be proven at trial.

C. An award of costs and attorney's fees, as provided by applicable provisions of federal and state statutory and common law.

D. An award of pre- and post-judgment interest as permitted by law.

E. For all other relief, both general and specific, to which Plaintiff may be entitled.

Respectfully submitted,

/s/ G. Alan Rawls

Gregory Brown, BPR# 027944
G. Alan Rawls, BPR# 038300
LOWE YEAGER & BROWN PLLC
920 Volunteer Landing, Suite 200
Knoxville, TN 37915
Phone: (865) 521-6527
Fax: (865) 637-0540
gb@lyblaw.net
gar@lyblaw.net